**Michael Fuller, OSB No. 09357**
michael@underdoglawyer.com
OlsenDaines
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
503-222-2000

**Kim Sordyl, OSB No. 031610**
kim@kimsordyl.com
Sordyl Law, LLC
422 NW 13th Ave. # 751
503-502-1974

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **NATHAN MONSON,** | Case No. 6:22-cv-00604-AA |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | **Retaliation for Reporting Matters of Public Concern in Violation of the First Amendment (42 USC § 1983); Retaliation for Opposing Sexual Harassment and Discrimination in Violation of Title VII (42 USC § 2000e); State Whistleblower claims and Aiding or Abetting (ORS 659A.030, 659A.199 and 659A.203); and common law claims (Wrongful Discharge and Intentional Infliction of Emotional Distress)** |
| **STATE OF OREGON,** through the **LEGISLATIVE CONDUCT COMMITTEE** and **ADMINISTRATION COMMITTEE**; and **FLOYD PROZANSKI, CHUCK THOMSEN, JULIE FAHEY, RON NOBLE,** and **JESSICA KNIELING,** in their individual capacities, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

**FIRST AMENDED COMPLAINT** – Page 1 of 24

## INTRODUCTION

1.  This is an action for declaratory, injunctive and monetary relief, including punitive damages and attorney's fees and costs to address unlawful civil rights and employment practices to which defendants subjected plaintiff at the Oregon State Capitol, in violation of plaintiff's constitutional, federal and state statutory and common law rights.

## JURISDICTION AND VENUE

2.  On April 22, 2022, pursuant to 28 USC § 1446, the state and state defendants voluntarily removed this action to federal court, invoking federal jurisdiction and thereby waiving jurisdictional immunity under the Eleventh Amendment.

3.  This court has jurisdiction under 28 USC § 1331, federal question jurisdiction.

4.  This Court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 USC § 1367 because the state claims arise from the same nucleus of operative facts as the federal claims. The state claims are so related to the federal claims that they form part of the same case or controversy and would ordinarily be expected to be tried in one judicial proceeding.

5.  Venue is appropriate in the District of Oregon pursuant to 28 USC § 1391(b) because the claims arose in this judicial district.

6.  Divisional venue is appropriate in the Eugene Division of the District of Oregon under LR 3-2(b) because a substantial part of the events or omissions giving rise to plaintiff's Claims occurred in Marion County.

**FIRST AMENDED COMPLAINT** – Page 2 of 24

## PROCEDURAL BACKGROUND

7.      Plaintiff was constructively discharged on or around June 9, 2021.

8.      On December 4, 2021, plaintiff provided a timely written notice of claim to defendants as required by ORS 30.275.

9.      On January 10, 2022, plaintiff timely filed charges of unlawful employment practices against defendants with the Oregon Bureau of Labor and Industries (BOLI), Civil Rights Division, including federal claims under Title VII.

10.      This case was timely filed with respect to all state and federal claims.

## PARTIES

11.      Plaintiff Nathan Monson is a former employee of the state of Oregon (state) who worked as the Legislative Equity Officer at the Oregon State Capitol (Capitol or Oregon Capitol) from April 12, 2021 until June 15, 2021.

12.      Defendant state of Oregon is a public body subject to suit and an employer for the purpose of 42 USC § 1983 (First Amendment), 42 USC § 2000e (Title VII) and ORS chapter 659A. The state acts through its agents, including the Oregon Legislative Assembly, the state's legislative branch of government; the Legislative Administration Committee, an agency providing administrative services to the Legislative Assembly at the Oregon Capitol; and the Joint Conduct Committee, an independent agency serving as plaintiff's appointing authority; along with the Legislative Assembly as a whole, pursuant to ORS 173.900.

13.      Defendants Floyd Prozanski, Chuck Thomsen, Julie Fahey and Ron Noble, Co-Chairs of the Joint Conduct Committee (collectively as individuals, "Co-Chairs") are elected

**FIRST AMENDED COMPLAINT** – Page 3 of 24

officials who, at all relevant times, served as the Co-Chairs of the Joint Conduct Committee, with the authority to terminate plaintiff.

14.    Defendant Jessica Knieling is an individual state employee. At all relevant times, Knieling served as the Human Resources (HR) Director or lead manager of the Office of Employee Services, an office governed by the Legislative Administration Committee.

## GENERAL ALLEGATIONS

15.    Events giving rise to the creation of the Legislative Equity Office at the Oregon Capitol relate to plaintiff's allegations in this case, including a history of sexual misconduct, legal noncompliance and retaliation in the form of threats of public exposure.

16.    Based on multiple reports and inaction by Capitol officials, including Senate President Peter Courtney, House Speaker Tina Kotek, Legislative Counsel Dexter Johnson and former Human Resources Director Lore Christopher, the then Commissioner of the Oregon Bureau of Labor & Industries (BOLI), Brad Avakian, opened an investigation.

17.    The investigation resulted in a determination of substantial evidence (BOLI SED) of legal noncompliance against the Oregon Legislative Assembly and the Legislative Administration Committee, which Courtney and Kotek oversee as chairs.

18.    The BOLI SED found that Johnson and Christopher's actions contributed to a culture in which fear of retaliation and public exposure were palpable: "Respondents are aware of the inherent chilling effect created by the power imbalances between legislators and those whose careers can be significantly hindered by Respondents. Respondents have compounded that chilling effect in multiple ways . . . . A culture where a victim is unable to prove what happened

**FIRST AMENDED COMPLAINT** – Page 4 of 24

to them can reasonably be in fear of being called a liar, or be sanctioned, is an optimal environment for harassment."

19.     The BOLI SED and ensuing Conciliation Agreement reflected Johnson and Christopher's lack of independence in handling reports of sexual harassment, protecting their own jobs over employees and interns at the Capitol. Accordingly, when the matter settled, all parties agreed that Christopher's office, now managed by defendant Jessica Knieling, and Johnson's office, still managed by Johnson, would play "no role" in discrimination and harassment investigations or complaints. That sentiment was codified at ORS 173.900. *See* ORS 173.900 (7)(b), (c) (mandating independence from other Capitol offices).

20.     The Conciliation Agreement was signed by Courtney, Kotek and later BOLI Commissioner, Val Hoyle, on March 5, 2019.

21.     In addition to prohibiting Johnson and Knieling's offices from handling harassment and discrimination complaints, the Conciliation Agreement mandated that the Oregon Legislative Assembly pay 1.3 million dollars to the victims, create an independent Legislative Equity Office with legally compliant processes and instate safety measures to protect reporting parties from retaliation, noting "Time is of the essence."

22.     Before plaintiff was hired, on several occasions, Courtney, Kotek and Hoyle received notice that the Conciliation Agreement was being breached, including events that received significant press coverage regarding Capitol mismanagement when it came to Legislative Branch Personnel Rule 27 (Rule 27) matters, the rule that governs harassment and discrimination reports at the Capitol. Changes to Rule 27, revised with participation of Knieling

**FIRST AMENDED COMPLAINT** – Page 5 of 24

and Johnson, were openly challenged as legally noncompliant, weakening protections from previous iterations.

23.     Additionally, Capitol managers questioned the qualifications and efficacy of the interim Equity Officer, Jackie Sandmeyer. For example, Knieling and Brett Hanes, the Legislative Administrator charged with administering the Capitol's respectful workplace policies, received knowledge that Sandmeyer lied on their resume.

24.     Despite ample notice of legal noncompliance and breach of several important provisions of the Conciliation Agreement, and a mechanism to challenge violations within the agreement, Hoyle took no action, nor did Courtney or Kotek. Sandmeyer remained in the position for roughly eighteen months.

25.     It took over two years for the Legislative Assembly and Joint Conduct Committee to hire a permanent Legislative Equity Officer. Plaintiff was recruited from Iowa after a five-month, open and competitive process and began work on April 12, 2021.

26.     In the normal course of plaintiff's duties, he conveyed to Knieling, the Co-Chairs and others general concerns regarding how Rule 27 matters were handled, communications that were consistent with his role as Legislative Equity Officer.

27.     However, as plaintiff encountered foot dragging, wheel spinning and intentional obstacles to enforcement, his observations became specific reports of systemic noncompliance, including but not limited to the following:

       a.   Most of the mandates required by the Conciliation Agreement had not been followed. For example, Sandmeyer had no electronic or paper files, no documentation of reports or complaints, no process for investigations, no

**FIRST AMENDED COMPLAINT** – Page 6 of 24

process for the intake or handling of reports, no records system and no

records. Sandmeyer's laptop was found to have nothing on it. Despite serving

the interim role for eighteen months, Sandmeyer had a second job.

b.  The Capitol was not following Rule 27, nor was it following legal

requirements under Title VII or state law. Many complaints were simply

ignored.

c.  Some of those complaints involved elected officials, and others named high-

level Capitol managers. Victims of alleged harassment and discrimination

shared with plaintiff that they were confused, frightened and sometimes angry.

d.  There was a lack of appropriate training specific to managers and supervisors.

e.  Concerns regarding overtime violations for non-managerial staff and the

Capitol's informal "comp time" system were dismissed, with Knieling stating,

"I know who you're talking about. The girls complain a lot."

f.  Fiscal matters were being mismanaged, including irresponsible spending and

inadequate documentation of spending on outside legal fees, and delays in

payment resulting in outside lawyers halting their investigations.

g.  The "anonymous" reporting system was toothless because plaintiff was given

no authority, actual or apparent, to take prompt appropriate action in the face

of notice of harassment after confirming reports. The anonymous system was

ineffective and legally noncompliant.

h.  Johnson and Knieling were actively participating in Rule 27 complaints and

process at many levels, in direct violation of the Conciliation Agreement.

**FIRST AMENDED COMPLAINT** – Page 7 of 24

28.     In fact, rather than following the mandates in the Conciliation Agreement, Knieling, Johnson and the Co-Chairs actively downplayed the events that inspired it, outlined in the BOLI SED.

29.     Knieling and the Co-Chairs told plaintiff that the underlying BOLI complainants were "crazy" and "political," dismissing the BOLI SED and Conciliation Agreement as the product of mentally unstable and malicious employees and interns.

30.     Johnson openly refuted BOLI's concerns regarding a retaliatory culture, denying allegations that he and his office informed victims of harassment their "careers would be over" if they complained, including threats of disclosure of sensitive documents as public records. Christopher, the former HR Director, resigned in the wake of the BOLI SED, but Johnson remained in office, openly painting the BOLI complainants as liars to the press.

31.     The Co-Chairs directed plaintiff to Knieling and Johnson for almost every aspect of plaintiff's job. Although Knieling was not officially plaintiff's appointing authority, direction from the Co-Chairs to consult with Knieling before acting rendered Knieling plaintiff's trainer and acting supervisor.

32.     Knieling reenforced her authority by informing plaintiff that there was no reason for him to seek guidance from the Co-Chairs, as they would be unable to assist him. Meanwhile, Knieling and the Co-Chairs deferred to Johnson regarding almost all decisions, legal or not.

33.     Due to Johnson's prominence in the BOLI SED and related statutory mandate, plaintiff asked the Joint Conduct Committee and Knieling for outside legal counsel. Plaintiff's request was ignored, with instruction from Sandmeyer, Knieling and the Co-Chairs to seek guidance and advice from Johnson. Johnson would state, "I'm not supposed to give legal advice

**FIRST AMENDED COMPLAINT** – Page 8 of 24

on Rule 27, but . . . ." He would then do exactly that, with the authority that comes with serving as the legislative branch's top lawyer.

34.    Thus, Johnson and Knieling continued to play active roles in Rule 27 investigations and complaints, despite the Conciliation Agreement's express mandate that the process be independent from those offices and despite time being "of the essence" for Johnson and Knieling's removal from the process.

35.    In or around April 2021, plaintiff informed Courtney and Kotek, signatories to the Conciliation Agreement, that a complaint involving a state legislator had not been handled properly under Rule 27 or the law, reporting systemic problems underlying the situation. Courtney's office and Kotek acknowledged the problems, including Sandmeyer's shortcomings, but no action was taken to enforce the Conciliation Agreement or provide plaintiff with additional support.

36.    Instead, plaintiff's reports to Courtney and Kotek resulted in a strong admonishment from Knieling because they were outside plaintiff's "chain of command," informing plaintiff "all communication of LEO problems goes through me," meaning Knieling.

37.    In late April and May, 2021, plaintiff reported specific violations to the Co-Chairs, including examples of legal noncompliance, abuses of power, gross waste and mismanagement, after which the Co-Chairs began to ignore plaintiff. To be successful, plaintiff's role required a close working relationship with the Joint Conduct Committee to exercise authority and direct Capitol management toward compliance.

38.    In May 2021, plaintiff received information that Knieling herself was the subject of a complaint of gender discrimination, a complaint that had been mismanaged. After plaintiff

**FIRST AMENDED COMPLAINT** – Page 9 of 24

learned more regarding the severity of the accusations and observed retaliatory animus by

Knieling toward the employee, plaintiff confronted Knieling in late May or early June 2021.

39.     Immediately after plaintiff confronted Knieling with allegations of Knieling's

own wrongdoing as HR Director, Knieling began to retaliate against plaintiff. Although plaintiff

had been hired months earlier, after an extensive five-month process, Knieling began to

scrutinize plaintiff's application, opening an "investigation" into his background.

40.     In contrast, after realizing that Sandmeyer's application did not match their

experience, Knieling and the Co-Chairs took no action. Additionally, Knieling believed that

Sandmeyer fraudulently represented their work hours and engaged in workplace bullying, but

Knieling conducted no investigation and took no action against Sandmeyer.

41.     On June 8, 2021, Knieling drafted a retaliatory memo to the Co-Chairs, attacking

plaintiff for allegedly lying on his resume. The memo was presented as an investigation report

from Employee Services on "Legislative Administration" letterhead, an agency expressly banned

from involvement with the Legislative Equity Office.

42.     On June 9, 2021, the Co-Chairs called plaintiff into a surprise meeting, opening

by reminding him that he was doing a great job, and then drilling him with questions about his

background. Plaintiff responded, offering to gather supplemental support to clarify confusion,

correct the record and assuage the Co-Chairs concerns.

43.     Although plaintiff had a reasonable explanation for events, Knieling approached

plaintiff immediately after the surprise meeting to cut off his efforts to provide the Co-Chairs

with more information. Knieling informed plaintiff that, according to the Co-Chairs, the decision

to terminate him had already been made, and he could not recover. Knieling made clear to

**FIRST AMENDED COMPLAINT** – Page 10 of 24

plaintiff that his career with the Oregon Legislative Assembly was over, and no documents or explanation would help.

44.     After Knieling informed plaintiff that the decision to terminate him was final, Knieling threatened plaintiff with public exposure if plaintiff did not tender a "resignation letter," with an accompanying memo regarding the state of the office.

45.     Knieling repeated her threats several times in the days that followed. The situation could have been handled in a closed executive session, and Knieling's threats were designed to frighten plaintiff regarding his future career to evoke a resignation letter, which would create the false appearance that plaintiff voluntarily resigned.

46.     Despite general legal standards and mandates in the Conciliation Agreement to create safeguards to protect Capitol employees from retaliation, there were no safety measures in place to prevent retaliation against plaintiff for reporting misconduct. Plaintiff was subjected to the same circular, pointless and retaliatory reporting chain exposed by the BOLI SED, and he had nowhere to turn.

47.     To avoid public exposure, based on Knieling's ongoing threats, plaintiff submitted a resignation letter and memo to the Co-Chairs on June 15, 2021. On receipt of plaintiff's resignation letter, Knieling stopped threatening plaintiff with public exposure, and the matter appeared closed.

48.     In or around early July 2021, encouraged by former colleagues at the Capitol to protect those vulnerable to noncompliance, plaintiff contacted a reporter regarding the status of the Legislative Equity Office. Plaintiff did not raise the issue of plaintiff's termination or constructive discharge but outlined concerns to protect others, including noncompliance,

**FIRST AMENDED COMPLAINT** – Page 11 of 24

unlawful conduct, gross fiscal waste and mismanagement, making clear that Capitol workers were subjected to ongoing discrimination and harassment.

49.     On July 8, 2021, Oregon Public Broadcasting (OPB) published a story regarding plaintiff's experience with noncompliance at the Capitol, an important matter of public concern.

50.     Plaintiff's disclosure of noncompliance to the press was particularly embarrassing for Knieling and Johnson, with similarities to the BOLI SED, in which Knieling's office and Johnson were largely featured.

51.     Suddenly, on July 15, 2021, Knieling and the Co-Chairs released records to the press and Capitol employees with allegations that plaintiff lied on his resume, including Knieling's retaliatory investigation and information from plaintiff's personnel file.

52.     The documents that Knieling and the Co-Chairs released to the press were labeled with an "LC" number, meaning that Johnson or his agents, the office of "Legislative Counsel," approved the sudden and unnecessary publication of Knieling's retaliatory investigation and other records to Capitol employees and the press.

53.     HR investigations and related documents are considered confidential under Oregon public records laws, and none of the exemptions applied to plaintiff's situation. Plaintiff did not resign in lieu of termination — he submitted a letter of resignation after a threat that if he did not do so, he would be publicly embarrassed. Plaintiff's interest in avoiding public humiliation far outweighed any public interest in the situation at hand, the applicable test. Alleged resume discrepancies in a former employee's application have nothing to do with sexual harassment, and they are not an important matter of public interest. The disclosure was obvious

**FIRST AMENDED COMPLAINT** – Page 12 of 24

retaliation against plaintiff for reporting the Capitol's mismanagement of harassment and discrimination matters.

54.     In contrast, no one offered to the press or Capitol employees documents regarding Sandmeyer's background, performance or conduct while Sandmeyer served in the same position, despite obvious discrepancies, nor was that information published in the wake of negative press regarding the Legislative Equity office, largely a reflection on Sandmeyer.

55.      Defendants' actions toward plaintiff were similar to the very conduct that inspired the ban on Johnson and Knieling's involvement with plaintiff's office in the first place, exposed by the BOLI SED, which found that those in power use the threat of negative public exposure as a weapon to punish those reporting and opposing unlawful conduct at the Oregon Capitol.

## <u>CONSTRUCTIVE DISCHARGE</u>

56.     Plaintiff's acting supervisor informed plaintiff that a decision was made to terminate him, with no chance of recovery. Plaintiff was terminated.

57.     In the alternative, through its agents, defendant state of Oregon terminated plaintiff from his employment because:

a.    Defendant intentionally mistreated plaintiff after he reported misconduct.

b.    A reasonable person in plaintiff's position would have believed his position was over after being told that a decision was made to terminate him, with no chance to recover. A reasonable person in plaintiff's position would have drafted a letter of resignation to avoid threatened public exposure and protect his future career.

**FIRST AMENDED COMPLAINT** – Page 13 of 24

    c.  Defendant intended to cause plaintiff to resign for opposing and reporting misconduct.

    d.  Plaintiff resigned as a result of defendant's actions.

<u>**DAMAGES ALLEGATIONS**</u>

58.    As a direct and proximate consequence of defendants' unlawful discriminatory conduct, plaintiff has suffered economic damages including but not limited to loss of wages and loss of benefits including medical and retirement benefits. Plaintiff is entitled to an award of lost wages and benefits to be proven at trial, in an amount decided by the jury to be reasonable.

59.    As a direct and proximate consequence of defendant's unlawful discriminatory conduct, plaintiff has and continues to suffer non-economic damages including, but not limited to, garden variety emotional distress, severe emotional distress, humiliation, loss of self-esteem, suicidal ideation, reputational damage and feelings of retaliation for which he seeks noneconomic damages to be proven at trial, in an amount decided by the jury to be reasonable.

60.    As a direct and proximate consequence of defendants' unlawful discriminatory conduct, plaintiff is entitled to equitable relief, including the expungement of any negative references in his personnel file, any working file, or other actors' file.

61.    As a direct and proximate result of the defendants' actions as alleged herein, plaintiff is entitled to injunctive relief, including reinstatement.

62.    Plaintiff is entitled to a declaration that defendant(s) retaliated against him in violation of his respective rights for each claim.

63.    Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial, where allowed by statute.

**FIRST AMENDED COMPLAINT** – Page 14 of 24

**FIRST CLAIM FOR RELIEF**
**42 U.S.C § 1983 – (First Amendment) Retaliation for Reporting Matters of Public Concern**
**Against Defendants Prozanski, Thomsen, Fahey, Noble, and Knieling**

64.     Plaintiff realleges and incorporates paragraphs 1 through 63 as though fully set forth herein.

65.     Plaintiff reported and opposed breaches of a public contract, abuses of power, mismanagement, sexual harassment, gender discrimination, discrimination in a place of public accommodation, gross waste and other legal violations (collectively, misconduct).

66.     Plaintiff's reports were reasonable, made in good faith, and constitute protected activity.

67.     Defendants Prozanski, Thomsen, Fahey, Noble (the Co-Chairs) and Knieling discriminated against plaintiff in the terms, conditions and privileges of employment due to his protected activity.

68.     Defendant Co-Chairs and Knieling terminated plaintiff for reporting and opposing misconduct.

69.     Defendant Co-Chairs and Knieling engaged in post-termination retaliation against plaintiff for further reporting and opposing misconduct after his termination.

70.     At all relevant times, defendant Co-Chairs and Knieling acted under color of state law in their capacities Co-Chairs of the Joint Conduct Committee, the HR Director and the Legislative Counsel, respectively.

71.     Defendants engaged in action and inaction that they knew or reasonably should have known would deprive plaintiff of his right to be free from retaliation for protected speech in the form of reporting misconduct.

**FIRST AMENDED COMPLAINT** – Page 15 of 24

72.     Defendants' actions were so closely related to the deprivation of plaintiff's rights as to be the moving force that caused his termination and post-termination retaliation.

73.     Defendants' actions were intentional or made with reckless or callous indifference to plaintiff's Constitutional rights.

74.     Plaintiff's disclosures constituted speech that was a matter of public concern because his speech related to breaches of contract, abuses of power, mismanagement, sexual harassment, gender discrimination and other legal violations.

75.     Plaintiff reported specific information that was not publicly known or available.

76.     Plaintiff's speech was made as a private citizen and not pursuant to his official job duties because plaintiff disobeyed instructions not to complain, because plaintiff made reports outside his chain of command and because plaintiff reported a documented pattern of misconduct that was systemic. Additionally, at the time of plaintiff's report to the press, plaintiff was no longer a public official.

77.     Plaintiff's interest in speech outweighs defendants' interest in administrative efficiency.

78.     Defendants' personnel decisions are not entitled to absolute immunity.

79.     Defendants are not entitled to qualified immunity because, as the Co-Chairs of the Committee overseeing harassment and discrimination complaints at the state capitol, HR Director and Legislative Counsel, any reasonable person in defendants' respective positions would know that it is unlawful to punish a public employee for exercising his longstanding, historical rights under the First Amendment to report noncompliance with harassment and discrimination laws, particularly in light of the binding Conciliation Agreement.

**FIRST AMENDED COMPLAINT** – Page 16 of 24

80.     Plaintiff is entitled to reasonable attorney fees and costs, pursuant to 42 USC §

1988.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C § 2000e-3 (Title VII) – Retaliation for Reporting Sexual**
**Harassment and Gender Discrimination**
**Against Defendant State of Oregon**

81.     Plaintiff realleges and incorporates paragraphs 1 through 79 as though fully set

forth herein.

82.     Defendant state of Oregon employs more than 500 employees.

83.     Plaintiff reported and opposed sexual harassment, gender discrimination and other

violations of well-establish rights under Title VII, reports made in good faith that constitute

protected activity.

84.     Defendant state of Oregon discriminated against plaintiff in the terms, conditions

and privileges of employment due to his protected activity.

85.     Defendant state of Oregon terminated plaintiff for reporting and opposing

violations of Title VII and engaged in post-termination retaliation against plaintiff for further

reporting and opposing violations of Title VII.

86.     Plaintiff is entitled to reasonable attorney fees and costs, pursuant to 42 USC §

2000e-5.

**FIRST AMENDED COMPLAINT** – Page 17 of 24

### THIRD CLAIM FOR RELIEF
### ORS 659A.203 – Public Employee Whistleblower
### Against Defendant State of Oregon

87.     Plaintiff realleges and incorporates paragraphs 1 through 79.

88.     Over and above his job duties, plaintiff opposed and reported breaches of the Conciliation Agreement, abuses of power, mismanagement, sexual harassment, gender discrimination, discrimination in a place of public accommodation, gross waste and other legal violations (collectively, misconduct).

89.     Plaintiff's reports were reasonable and made in good faith.

90.     Defendant state of Oregon retaliated against plaintiff for reporting and opposing misconduct. Defendant committed multiple acts of retaliation against plaintiff including, but not limited to, threatening him not to report violations to anyone other than Knieling, withholding information necessary to perform his job, withholding resources such as access to qualified and nonconflicted legal counsel, treating him differently from those who did not report misconduct, scrutinizing his background, ordering him to resign, causing his termination and intentionally publishing negative information about plaintiff.

91.     Plaintiff is entitled to reasonable attorney fees and costs, pursuant to ORS 659A.885 and ORS 20.107.

**FIRST AMENDED COMPLAINT** – Page 18 of 24

## FOURTH CLAIM FOR RELIEF
### ORS 659A.199 – Retaliation for Reporting Unlawful Conduct
### Against Defendant State of Oregon

92.     Plaintiff realleges and incorporates paragraphs 1 through 79.

93.     Over and above his job duties, including after his termination, plaintiff opposed and reported breaches of public contract, abuses of power, mismanagement, sexual harassment, gender discrimination, discrimination in a place of public accommodation and other legal violations (collectively, misconduct).

94.     Plaintiff's reports were reasonable and made in good faith.

95.     Defendant state of Oregon terminated plaintiff for reporting and opposing misconduct and engaged in post-termination retaliation against plaintiff for further reporting and opposing misconduct.

96.     Plaintiff is entitled to reasonable attorney fees and costs, pursuant to ORS 659A.885 and ORS 20.107.

## FIFTH CLAIM FOR RELIEF
### ORS 659A.030 (1)(f) – Retaliation for State Civil Rights Violations
### Against Defendant State of Oregon

97.     Plaintiff realleges and incorporates paragraphs 1 through 79.

98.     Defendant state of Oregon is a person and public body defined by ORS 659A.001 and ORS 30.260.

99.     Over and above his job duties, including after his termination, plaintiff engaged in protected activity by opposing and reporting sexual harassment, gender discrimination, discrimination based on sex in a place of public accommodation and other violations of ORS chapter 659A.

**FIRST AMENDED COMPLAINT** – Page 19 of 24

100.    Plaintiff's reports were reasonable and made in good faith.

101.    Defendant state of Oregon discriminated against plaintiff in the terms, conditions and privileges of employment due to his protected activity.

102.    Defendant state of Oregon terminated plaintiff for his reports and opposition to sexual harassment, gender discrimination, discrimination based on sex in a place of public accommodation and other violations of ORS chapter 659A.

103.    Plaintiff is entitled to reasonable attorney fees and costs, pursuant to ORS 659A.885 and ORS 20.107.

**SIXTH CLAIM FOR RELIEF**
**ORS 659A.030 (1)(f), (g) – Retaliation and Aiding or Abetting State Civil Rights Violations**
**Against Defendants Prozanski, Thomsen, Fahey, Noble, and Knieling**

104.    Plaintiff realleges and incorporates paragraphs 1 through 79.

105.    Defendants Prozanski, Thomsen, Fahey, Noble (the Co-Chairs), and Knieling's actions were part of a systematic pattern of conduct taken in retaliation for plaintiff's protected activities. Defendants discriminated and retaliated against Plaintiff in violation of ORS 659A.030 (1)(f) because plaintiff opposed a practice that he reasonably and in good faith believed was evidence of violations of ORS chapter 659A.

106.    Defendant Co-Chairs and Knieling acted individually as aiders or abettors under ORS 659A.030(1)(g) because each of them played a role in retaliating against Plaintiff, by their action or inaction, for opposing practices that plaintiff reasonably and in good faith believed constituted evidence of a violation or violations of ORS 659A.030 or 659A.400 et seq.

107.    Plaintiff is entitled to reasonable attorney fees and costs, pursuant to ORS 659A.885 and ORS 20.107.

**FIRST AMENDED COMPLAINT** – Page 20 of 24

## SEVENTH CLAIM FOR RELIEF
### Wrongful Discharge in Violation of Public Policy
### Against Defendant State of Oregon

108.    Plaintiff incorporates by references the allegations in paragraphs 1 through 79.

109.    Oregon has a public policy prohibiting public officials from discriminating or otherwise retaliating against employees because they report conduct that violates an inter-governmental agreement such as the Conciliation Agreement, designed to remedy past and prevent future acts of sexual harassment and gender discrimination at the Capitol.

110.    Oregon has an important public policy protecting a government employee who blows the whistle on his employer.

111.    Oregon has a public policy prohibiting public officials from discriminating or otherwise retaliating against employees because they report harassment or discrimination.

112.    Through its agents, defendant terminated plaintiff's employment for opposing and reporting conduct in violation of public policy.

113.    Plaintiff does not have adequate statutory remedies against the state of Oregon under 42 USC § 1983 because the state is a public body, not an individual subject to suit under the statute.

114.    Plaintiff is entitled to reasonable attorney fees and costs under ORS 20.107.

**FIRST AMENDED COMPLAINT** – Page 21 of 24

**EIGHTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**
**Against All Defendants**

115.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 79.

116.    Defendants committed extraordinary transgressions of socially tolerable conduct toward plaintiff, including but not limited to a pattern of retaliation, threats of public exposure, inappropriate and unnecessary public disclosures and violations of the Conciliation Agreement, state and federal law.

117.    Defendants' actions were intentional and they intended to inflict severe emotional distress on plaintiff.

118.    Plaintiff suffered severe emotional distress due to defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the court to:

1.    Declare defendants in violation of the statutes and cause of action set forth in each of plaintiff's claims for relief;

2.    Grant all appropriate injunctive relief, including but not limited to reinstatement or reemployment;

3.    Order defendants to make plaintiff whole by providing compensation for non-economic losses in an amount decided by the jury to be reasonable.

4.    Order defendants to make plaintiff whole by compensating him for his past and future economic damages in an amount decided by the jury to be reasonable.

5.    Order defendants to compensate plaintiff for his costs of suit and reasonable attorney fees, costs, and expert witness fees;

**FIRST AMENDED COMPLAINT** – Page 22 of 24

6.      Order defendants to pay prejudgment interest, where applicable, and post-judgment interest on all amounts due to plaintiff as a result of this action, with interest at the prevailing rate; and

7.      Order such further or alternative relief in favor of plaintiff as the court deems appropriate.

8.      Plaintiff demands a jury trial.

DATED this 20 day of May, 2022.          SORDYL LAW, LLC

                                        /s/ Kim Sordyl
                                        Kim Sordyl, OSB No. 031610
                                        Kim@kimsordyl.com
                                        Sordyl Law, LLC
                                        422 NW 13th Ave. # 751
                                        503-502-1974


                                        OLSENDAINES, PC

                                        Michael Fuller, OSB No. 09357
                                        michael@underdoglawyer.com
                                        111 SW 5th Ave., Suite 3150
                                        Portland, Oregon 97204
                                        503-222-2000


                                        Of Attorneys for Plaintiff

**FIRST AMENDED COMPLAINT** – Page 23 of 24

## CERTIFICATE OF SERVICE

I caused this document to be served on all necessary parties through the CM/ECF system.

May 20, 2022

/s/ Michael Fuller
Michael Fuller, OSB No. 09357
michael@underdoglawyer.com
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
503-222-2000

**FIRST AMENDED COMPLAINT** – Page 24 of 24